## McFARLAND v. CHARLES HEBARD & SON.

MASTER AND SERVANT—DUTY TO PROTECT SERVANT—NEGLIGENCE —PERSONAL INJURIES.

Defendant, having undertaken to carry the plaintiff, an employé, by boat to the place where he was to work, and being compelled to put him ashore at another point, owed plaintiff a duty to direct him by a safe route to the boarding house conducted by defendant, to which plantiff was sent, and it was for the jury to determine whether the duty was properly performed by sending plaintiff along a tramway in the dark in charge of a man with a lantern in such manner that plaintiff was unable to see the width of the tramway and stepped off while attempting to make way for a car running on the structure.[1]

Error to Baraga; Streeter, J. Submitted January 16, 1913. (Docket No. 139.) Decided March 20, 1913.

Case by Hugh McFarland against Charles Hebard & Son for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*J. L. Heffernan*, for appellant.

*Mason & O'Connor*, for appellee.

·OSTRANDER, J. Defendant is a corporation. Plaintiff was injured upon premises belonging to defendant October 31, 1907. He began this suit March 30, 1910. It was tried October 30, 1911, and upon the testimony introduced by the plaintiff a verdict was directed for the defendant and judgment entered on the verdict. The bill of exceptions contained all of the testimony, and, the court having been of opinion that it did not tend to prove negli-

---

[1] As to duty to warn or instruct servant, see note in 44 L. R. A. .33.

gence on the part of defendant, the single question presented is whether, viewing the testimony most favorably to plaintiff's contention, it tends to prove negligence.

The circumstances attending plaintiff's injury are peculiar. He was one of a party of twelve men who had been hired to work for defendant and had been carried on a tugboat belonging to defendant from L'Anse to Pequaming. At the latter point defendant had a dock and sawmill. It was intended to disembark the men at some other point, but weather conditions caused a change of the plan, and at some time between 5 and 6 o'clock in the evening the men were put on shore at Pequaming. The testimony for plaintiff tends to establish the following facts: He was a stranger to the surroundings. The men were directed by the captain of the tug to leave it, go to a tramway, follow the tramway until a stairway leading from it was reached, descend the stairway, and go to a boarding house for the night, leaving their clothing, etc., on the tug. To reach and go upon the tramway it was necessary to climb a pile of timber. Reaching the tramway, the width of which he could not see, the plaintiff, who was in the immediate company of the man who hired him for defendant, proceeded for some distance, when a tram car, drawn by a horse, was heard apparently moving towards them. Some one said:

" 'There is a car coming; you better stay here till I see.' * * * I stepped to one side. * * * I was afraid the car would run over me."

No light was carried either by the men whom plaintiff accompanied or upon the car, or the horse, and plaintiff, afraid of the approaching car, which he could not see, stepped to the side of the tramway and off of it, falling a distance of 12 or 15 feet. There was a merchandise dock at which the men might have been landed. While the testimony leaves much to be desired in the way of description of the premises, it is to be inferred and appears to be conceded that the tramway was an elevated structure running

from the mill to and over the water; and that cars of lumber and slabs were drawn upon it from the mill and piled alongside the tramway; that the tugboat had tied up at or near the end of the tramway; and that the men were obliged to climb from the boat upon the lumber to the tramway, which was properly constructed for the purposes for which it was used and wide enough to permit the car to pass them. The attorney for the defendant, in moving a peremptory instruction to the jury, admitted that the captain of the boat was, at the time, the agent of defendant. There is no testimony more favorable to the plaintiff than this; there is testimony introduced in his behalf which is less favorable. The duty of the defendant alleged is—

"To provide a safe landing for plaintiff from its said tugboat and to see that proper instructions and directions should be given him when they would not permit him to stay overnight on said tugboat and when no other safe way of getting ashore was told him or known to him, * * * and not to invite him to go upon said premises of the said defendant without instructing him as to the nature and construction of said tramway and premises so that he might avoid the risk to which he was exposed by such nature, construction, and surroundings, and the darkness which existed."

The learned trial judge said to the jury.

"Now, I have been unable to discover any failure in the duty that Hebard & Son owed to this plaintiff. There is no testimony in this case to show that this platform, trestle, or whatever it is that the tramway was on, was not properly constructed, was not of sufficient width to permit a man to pass a car which might be moving on the tramway. There is no testimony to show that the car was not running there in the ordinary course of business. There is no testimony to show that the man who was conducting this party with the lantern was not familiar with the premises and competent to conduct them in a safe way, and there is testimony that the plaintiff was in direct company with the man who hired him, and that they were with the lantern which had been provided for their safety at that time. That he was seriously injured, I think there

is no question; but I have been unable to receive information from the attorney for the plaintiff as to in what particular he claims that the defendant company, or firm, Hebard & Son, was negligent in the matter in any degree. And from the testimony as it stands in this case it seems to me that the only proper conclusion to arrive at is that it was one of those unfortunate occurrences which we call accidents which happened to this man under circumstances of comparative safety. I say that because 13 out of the 14 that were in the party were not injured or molested at all, all in the same condition. There is no testimony here to show that there was not ample space at the side of the platform to avoid the car if one was coming. And every particle of testimony he has given, so far as I have been able to follow it, shows that while the injury was occasioned by his falling from the trestle, perhaps under circumstances which would have happened ordinarily and without attributing any fault to himself, as I say, I fail to see that he has shown any fault on the part of the defendant, and therefore I think it is my duty to direct you to find a verdict in favor of the defendant."

In disembarking plaintiff, the defendant owed him some duty, especially in landing him upon its own premises. The tramway may have been a safe way to travel in the daylight, or in the night by one acquainted with the surroundings. Knowledge acquired generally by one accustomed to work about such premises would be some protection. We cannot say, as matter of law, that defendant's duty was properly performed. Defendant had undertaken to convey plaintiff from L'Anse to another point. Circumstances required it to put him ashore, in the dark, at a different place. Under the circumstances it owed him the duty to direct him by a reasonably safe way from its boat to its boarding house, if such a way existed, and if not, and if the way pointed out was unsafe, or might become so during plaintiff's journey over it, to either advise him of danger and how to avoid it, or to escort him.

If the jury believed that an escort with a lantern was provided, it would still be a question of fact whether this was a reasonably sufficient provision, all the circumstances being considered. We suggest nothing concerning

the merits of the controversy. We hold that whether defendant discharged its duty to plaintiff is, upon this record, a question of fact for a jury.

The judgment is reversed, and a new trial granted.

Steere, C. J., and Moore, McAlvay, Brooke, Kuhn, Stone, and Bird, JJ., concurred.